02/28/06    IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION

UNITED STATES OF AMERICA        :    Case No. 3:04CR140(4)
                                :
        v.                      :
                                :
**TODD THOMAS BROWN**           :    PLEA AGREEMENT

- - - - - - - - - - - - - - - - - -

It is hereby agreed between **TODD THOMAS BROWN**, individually and through his attorney, Alan Gabel, Esq., and the United States, by counsel, as follows:

1. **TODD THOMAS BROWN** will enter a plea of guilty to Count 1 of a Second Superseding Indictment filed herein on February 28,2006 charging him with Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 846. Count 1 carries a minimum mandatory penalty of 10 years to life imprisonment, a fine up to $4,000,000, and at least a 5 year-term of supervised release. Once said guilty plea is entered, accepted, and not withdrawn, the United States Attorney for the Southern District of Ohio agrees not to charge defendant with other offenses that were part of the same scheme and which occurred in the Southern District of Ohio during this period. This agreement binds only the United States Attorney for the

Southern District of Ohio. No agreements or promises have been made concerning any other Districts, State, Federal or local.

2. For the purpose of calculating an advisory Sentencing Guidelines range, the parties agree to recommend that the base offense level is 38 and that there are no applicable specific offense characteristics that raise the advisory offense level. Subject to the foregoing, the parties reserve the right to argue particular adjustments and departures are appropriate. Defendant understands that the United States Probation Office ("Probation Office") will conduct a pre-sentence investigation and will recommend to the Court an advisory Sentencing Guidelines range, including, among other matters, a Base Offense Level, specific offense characteristics, adjustments and any departures. Defendant understands that the Probation Office's recommendations are not binding on the Court. Defendant further understands that the Sentencing Guidelines range is an advisory range to be considered by the Court along with other appropriate sentencing factors. Defendant understands that the terms of this Plea Agreement, including, but not limited to, any recommendations made by the USAO or the Defendant, are not binding upon the Court or the Probation Office. Defendant understands that the Court alone will determine an appropriate sentence, which may or may not be consistent with any recommendations of the parties. Defendant understands that if the Court does not follow any

2

recommendations made by the parties, he does not have the right to withdraw his plea of guilty. Defendant understands and acknowledges that pursuant to Title 18, United States Code, Section 3553, and U.S.S.G. §§ 1B1.3, 1B1.4, and 5K2.21, among other provisions and authority, the Court could potentially consider uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors. Defendant understands and acknowledges that he could receive up to the maximum penalties provided by law if the Court so determines.

## DEFENDANT'S OBLIGATIONS

3. Defendant agrees that he will:

a) Not knowingly or willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender (if on bond) as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

b) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

3

c) Pay to the United States Clerk of Court, prior to or at the time of sentencing, a special assessment in the total amount of $100 as required by Title 18, United States Code, Section 3013.

## THE USAO'S OBLIGATIONS

4. If Defendant complies fully with all of his obligations under this agreement, the USAO agrees:

a) To abide by any sentencing stipulations contained in this agreement.

b) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction available under that section. Defendant acknowledges and understands that the Court, with the assistance of the Probation Office, will independently determine his sentence and whether he has accepted responsibility. Furthermore, Defendant acknowledges and understands that he will not be permitted to withdraw his guilty plea if the Court determines that this reduction is not appropriate, in whole or in part.

c) If the USAO determines, in its exclusive judgment, that Defendant has both complied with his obligations under this

4

Plea Agreement and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a sentence within this reduced range. At the option of the United States Attorneys Office, the Government also has authority to file the substantial assistance motion under 18 U.S.C. § 3553(e) which could allow the Court to sentence the defendant below the 10 year minimum mandatory sentence.

### DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE

5. Defendant further understands the following:

a) Any knowingly false or misleading statement by Defendant will subject Defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by Defendant of this agreement.

b) Nothing in this agreement requires the USAO or any other prosecuting or law enforcement agency to accept any cooperation or assistance that Defendant may offer, or to use it in any particular way.

c) Defendant cannot withdraw his guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range, or a motion under 18 U.S.C. § 3553(e) or

5



Federal Rule of Criminal Procedure 35(b) or if the USAO makes such a motion and the Court does not grant it, or if the Court grants such a motion but elects to sentence above the reduced range.

d) At this time the USAO makes no agreement or representation as to whether any cooperation that Defendant has provided or intends to provide constitutes substantial assistance. The decision whether Defendant has provided substantial assistance rests solely within the discretion of the USAO.

e) The USAO's determination of whether Defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies.

f) The USAO has no obligation to file a motion pursuant to U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e).

g) Federal Rule of Criminal Procedure 35(b) allows the USAO to file a "substantial assistance" motion generally within one year after the sentence is imposed. The Government will consider the filing of a Rule 35(b) "substantial assistance" motion if Defendant fails to provide substantial assistance prior to sentencing, but later satisfies the requirements of U.S.S.G. § 5K1.1. The USAO has no obligation to file a "substantial assistance" motion pursuant to Rule 35(b). The United States

6

retains sole and complete discretion to determine whether a Rule 35(b) "substantial assistance" motion should or will be filed.

DISCUSSION, UNDERSTANDING, COMPLETE AGREEMENT, USAO

6. By signing this agreement, the Defendant acknowledges that he has discussed its terms with his attorney and understands and accepts those terms. Further, Defendant acknowledges that this document contains the entire plea agreement between the Defendant and the USAO through its undersigned attorney. No other agreements, promises, deals, bargains or understanding exist which modify or alter these terms. This agreement binds only the United States Attorney's Office for the Southern District of Ohio and does not bind any other federal, state or local prosecuting authority.

DATE 3/7/06/

**TODD THOMAS BROWN**
Defendant

DATE 3/7/06

Alan Gabel, Esq.
Attorney for Defendant

GREGORY G. LOCKHART
United States Attorney

DATE 3/2/06

J. RICHARD CHEMA
Assistant U.S. Attorney

2/22/06

STATEMENT OF FACTS
*TODD ANTHONY BROWN aka TODD THOMAS BROWN*

From about September 27, 1996, up to and including October 12, 2004, in the Southern District of Ohio and elsewhere, defendant **TODD ANTHONY BROWN**, AKA TODD THOMAS **BROWN**, did knowingly, willingly, intentionally, and unlawfully combine, conspire, confederate and agree with defendants EARL MARSHALL, CHARLES GOFF JR., TICO HILL, JEFF PARKER, CLARENCE PARKER, KENYATTA MORELAND, HENRY RAYFORD, TRACY MARSHALL, BRYANT BRIGGS and others to intentionally and unlawfully distribute and possess with intent to distribute in excess of one hundred fifty kilograms of cocaine.

During this entire time period, **BROWN**, TICO HILL, JEFF PARKER, KENYATTA MORELAND, HENRY RAYFORD, TRACY MARSHALL, BRYANT BRIGGS and others received kilogram quantities of cocaine from EARL MARSHALL and/or CHARLES GOFF JR., and distributed the cocaine in the Dayton, Ohio area and elsewhere.

As a member of the conspiracy, **BROWN** traveled between Dayton, Ohio and Chicago, Illinois in tandem with CLARENCE PARKER, and others, to conduct business on behalf of the conspiracy for EARL MARSHALL and CHARLES GOFF, JR. This business included obtaining kilogram quantities of cocaine, at the direction of EARL MARSHALL from members of a Mexican drug trafficking organization in Chicago, Illinois and transporting the cocaine to Dayton, Ohio for distribution. Another part of the business included transporting proceeds (U.S. Currency) from the sale of the cocaine from Dayton, Ohio to Chicago, Illinois to pay for the previously obtained cocaine. While

conducting this business, **BROWN** acted as a "look-out" for CLARENCE PARKER, and others, who were transporting the loads of cocaine and currency on behalf of EARL MARSHALL and/or CHARLES GOFF JR. **BROWN** followed CLARENCE PARKER, and others, who were transporting the cocaine and U.S. Currency in vehicles equipped with secret compartments for the sole purpose of transporting illegal drugs and currency, to ensure for EARL MARSHALL and/or CHARLES GOFF JR., that the cocaine and/or currency reached the intended destination.

For a portion of this time period CHARLES GOFF JR., was being supervised by United States Pretrial Services as a condition of his bond for an arrest that occurred on or about September 25, 1996 when GOFF JR., was arrested by agents of the Drug Enforcement Administration while attempting to possess 39 kilograms of cocaine that was being delivered to him by members of the Mexican drug trafficking organization in Chicago. During this time period, but prior to his eventual conviction and incarceration for the above referenced charge, CHARLES GOFF JR., while being supervised by United States Pretrial Services, transferred leadership of the conspiracy to EARL MARSHALL. MARSHALL was given authority to deal directly with members of the Mexican drug trafficking organization in Chicago for the purpose of obtaining cocaine for distribution in Dayton, Ohio and elsewhere. The agreement between GOFF JR., and MARSHALL was for MARSHALL to pay GOFF JR., or his designee, $2,000 for each kilogram of cocaine that MARSHALL obtained from members of the Mexican drug trafficking organization that had been supplying cocaine to GOFF JR.

BROWN continued to conduct business on behalf of the conspiracy, in the same manner as before, for EARL MARSHALL who began to arrange for the obtaining of

2

loads of cocaine from members of the Mexican drug trafficking organization in Chicago and the distribution of the cocaine in Dayton, Ohio. **BROWN** continued to travel to Chicago in tandem with CLARENCE PARKER and others until approximately 2000 or 2001. Additionally, BROWN was present with EARL MARSHALL on several occasions in the Dayton, Ohio area when MARSHALL distributed cocaine to TICO HILL, JEFF PARKER, KENYATTA MORELAND, HENRY RAYFORD, BRYANT BRIGGS, TRACY MARSHALL and others, who in turn distributed the cocaine in the Dayton, Ohio area and elsewhere. **BROWN** accompanied EARL MARSHALL to "stash houses" maintained by BRYANT BRIGGS, THERESA JONES, TRACY MARSHALL, LYNETTE DAVIS, JENELL STEPHENS and others, where MARSHALL stored his cocaine and proceeds from cocaine sales for the purpose of secreting cocaine or retrieving cocaine from the residences. **BROWN** helped EARL MARSHALL count approximately $200,000 of drug proceeds at a "stash house" maintained by LYNETTE DAVIS in preparation for payment to members of the Mexican drug trafficking organization in Chicago for cocaine purchased by MARSHALL.

In or about 2001, BROWN was present with EARL MARSHALL, TICO HILL, JEFF PARKER, BRYANT BRIGGS and members of the Mexican drug trafficking organization at a "stash house", operated by MARSHALL, located at the address known as 2285 Diamond Mill Road, Dayton, Ohio when the Mexicans delivered over 50 kilograms of cocaine on one occasion and approximately 600 pounds of marijuana on another occasion to MARSHALL. MARSHALL then distributed some of the cocaine and marijuana to the above individuals.

3

For a period of time during the conspiracy **BROWN** stored a Dodge Viper and a Chrysler Prowler at his residence for CHARLES GOFF JR., who purchased the vehicles with drug proceeds.

During the conspiracy, EARL MARSHALL introduced BROWN to GLEN HURST who owned and operated AMERICAN FUNDING AGENCY in Dayton, Ohio, for the purpose of obtaining mortgage loans, through fraudulent means, to finance the purchase and refinancing of a property for **BROWN** in the Dayton, Ohio area. In return for $5,000.00 U.S. currency per loan, HURST directed his employees, including KIM MCGINNIS, to prepare mortgage applications containing false income and other financial information that was relied upon by the lender as a basis for granting mortgage loans to MARSHALL, **BROWN**, and others who would not legitimately qualify for real estate mortgages. **BROWN** and MARSHALL paid HURST separately from the closing for each real estate transaction. BROWN, MARSHALL, and others used drug proceeds to pay HURST for his assistance in obtaining mortgage loans and to make the down payment for the property that was being purchased.

For the information of the Court, cocaine is a Schedule II Controlled Substance.